**IN THE UNITED STATES DISTRICT COURT**
**OF THE EASTERN DISTRICT OF TEXAS**
**TEXARKANA DIVISION**

| | | |
|---|---|---|
| **DATATREASURY CORPORATION** | § | |
| | § | |
| **V.** | § | **No.  5:03CV39** |
| | § | |
| **FIRST DATA CORPORATION, FIRST** | § | |
| **DATA MERCHANT SERVICES CORP.,** | § | |
| **TELECHECK SERVICES, INC.** *d/b/a* | § | |
| **TELECHECK INTERNATIONAL, INC.,** | § | |
| **and MICROBILT CORPORATION** | § | |

## ORDER

Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3) and the Amended Order for the

Adoption of Local Rules for Assignment of Duties to United States Magistrate Judges, DataTreasury

Corporation's Motion to Compel (Docket Entry # 266) was referred to the Honorable Caroline M.

Craven for the purposes of hearing and determining said motion.  The Court, having reviewed the

motion and the response, is of the opinion the motion should be **GRANTED IN PART and**

**DENIED IN PART**.

### PLAINTIFF'S MOTION

DataTreasury Corporation ("Plaintiff") moves the Court to compel Defendants' Rule 30(b)(6)

deponents to testify on the topics noticed in the following two notices of deposition and subpoena

duces tecum served on First Data Corporation, et al. ("Defendants") on September 21, 2006: (1)

Plaintiff's Second Amended 30(b)(6) Notice to Telecheck ("Damages Notice") and (2) Plaintiff's

Second Amended 30(b)(6) Notice to First Data/Telecheck ("Infringement Notice").  Plaintiff further

moves the Court to compel Defendants to produce the document requested in the subpoena duces

tecum.

In response, Defendant assert they have been working diligently to supply and have produced documents and have repeatedly offered individuals regarding the 30(b)(6) topics. Specifically, Defendants produced approximately 500,000 pages related to CPIS and damages on October 16, 2006, about 3 weeks after Plaintiff's subpoena was served on September 21, 2006. Defendants state the Court's recent summary judgment rulings created a need for a new documents or reports that segregate revenue and cost information for the ECA service based on terminal type (*i.e.*, Eclipse vs. Accelera), and as this information is not normally generated in Defendants' ordinary course of business, Defendants' efforts to generate these reports are continuing. Defendants hope to have these documents produced in relatively short order.

Defendants assert they are only objecting to the scope of the requested discovery to the extent that it goes beyond the realm of the presently accused instrumentalities as defined by the undersigned in her August 31, 2006 Order Denying in Part Plaintiff's Motion to Amend its Infringement Contentions. According to Defendants, allowing Plaintiff to discover information regarding un-accused products, services, and systems imposes undue burden on Defendants without furthering Plaintiff's trial preparation efforts.

## APPLICABLE LAW

FED. R. CIV. P. 26(b)(1) provides parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. All discovery is subject to the limitations imposed by Rule 26(b)(2)(i), (ii), and (iii). Specifically, Rule 26(b)(2)(iii) allows the Court to limit discovery if the burden or expense of the proposed discovery outweighs the likely benefits of the discovery, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the

proposed discovery in resolving the issues.

Local Rule CV-26(d) provides guidance in evaluating whether a particular piece of information is "relevant to the claim or defense of any party."  Rule 26(d) provides, in pertinent part, as follows: (1) information is relevant if it is information likely to have an influence on or affect the outcome of a claims or defense; (2) information is relevant if it is information that deserves to be considered in the preparation, evaluation or trial of a claim or defense; and (3) information is relevant if it is information that reasonable and competent counsel would consider reasonably necessary to prepare, evaluate or try a claim or defense.

## DISCUSSION

**Damages Notice**

Plaintiff's Damages Notice requests information and documents from 1999 to present relating to Plaintiff's claim for damages, including: (1) revenues, costs of goods sold, and operating margins of Telecheck as a whole and the accused services; (2) budgeting and sales forecasting processes for Telecheck as a whole and the accused service; (3) benefits and costs savings to Telecheck as a whole and the accused service; (4) current and historical pricing of ECA services and factors involved in pricing including the role image capture plays in setting the pricing; (5) check processing operations including "CPIS;" (6) operations of the collections department including the use of check redeposit, RCK transactions, collections letter, and collections agents; (7) volumes of check images captured in CPIS, Check Verification, and Check Guarantee; (8) Telecheck policies, practices, and criteria used for technology licensing; (9) contracts and agreements between First Data and/or Telecheck and Giant Eagle, Inc. that relate to ECA with Eclipse services, CPIS, and check imaging or archiving; and (10) contracts and agreements between First Data and/or Telecheck and Mobius Management

3

Systems, Inc. that relate to ECA with Eclipse services, CPIS, and check imaging or archiving.

Defendants objected to the requests, asserting multiple topics are directed to non-accused entities (i.e., TRS Recovery Services), and during depositions Plaintiff has insisted on exploring systems and services that are offered by non-accused First Data entities. By way of example, Defendants state Plaintiff's discovery demands have encompassed "[r]evenues, costs of goods sold, operating expenses, and operating margins *for each business unit and/or subsidiary related to Telecheck* (including … TRS Recovery Services) . . . Deposition Topic and Document Request No. 1 (emphasis added). Defendants object to the scope of Plaintiff's discovery demand as improper, and Defendants object to the extent that Plaintiff seeks any information about any products, services, and/or systems that are not properly accused instrumentalities of the patents-in-suit.

In its current motion, Plaintiff asserts the information requested goes to the reasonable royalty Plaintiff claims from First Data and Telecheck.  According to Plaintiff:

> DataTreasury and its economic experts need full financial information, including sales, costs of goods sold, and expenses, on all Telecheck business units for several reasons.  First, the financial statements of all Telecheck divisions, including those which are not accused of infringing the patents-in-suit, need to be examined and analyzed in order to calculate the difference in profitability between infringing and non-infringing activities.  Second, operating expenses are generally allocated among various business units but not necessarily in proportion to sales of their respective business units.  Third, to the extent that Telecheck divisions which sell infringing services receive cost allocations from the non-infringing divisions, or vice-verse, financial statements of both the infringing and non-infringing divisions should be examined to determine the appropriateness of such allocations.

Plaintiff's mot. at pgs. 3-4.

Further, Plaintiff asserts the information and documents pertaining to Giant Eagle, Inc. relate to willful infringement on the part of Defendants.  Plaintiff asserts their representatives have testified that Plaintiff was in negotiations with Giant Eagle for a check imaging deal; Defendants knew of

Plaintiff's involvement with Giant Eagle and knew of Plaintiff's patents; and Defendants' representatives promised to indemnify Giant Eagle if Plaintiff filed a suit for patent infringement. Finally, Plaintiff argues Mobius Management Services, Inc. provides check image archive services with respect to CPIS and ECA services accused of infringing the patents-in-suit, and the contracts and agreements between Defendants and Mobius are relevant.

Defendants have produced and are producing financial documents relevant to CPIS and ECA. However, Plaintiff is also seeking "the financial statements of ***all TeleCheck divisions***, including those ***which are not accused of infringing the patents-in-suit*** . . .  in order to calculate the difference in profitability between infringing and non-infringing activities." Plaintiff's mot. at pgs. 3-4 (emphasis added).  The Court finds improper Plaintiff's request for information about any products, services, and/or systems that are not properly accused instrumentalities of the patents-in-suit.  The Court denies Plaintiff's motion to compel discovery related to Defendants' un-accused products, systems, processes, and financials. To the extent it has not already done so, Defendants shall produce to Plaintiff discovery concerning the accused instrumentalities.

**Infringement Notice**

Plaintiff's Second Amended 30(b)(6) Notice to First Data / Telecheck ("Infringement Notice") requests information and documents from 1999 to present regarding: (1) Defendants' past, current, and planned future use, sale, or offering for sale of the allegedly infringing products, services, and systems including, the sale of Eclipse terminals, the provision of ECA services, and the sale or use of CPIS specifically including, but not limited to, image capture, whether of the whole or partial document, transmission of images over a communications network, archival of images, retrieval of images, and encryption; (2) all steps in the process of capturing images of documents;

5

(3) the network architecture between image capture sites, the Telecheck hosts, and all archiving and retrieval locations; (4) the technical functioning of all products and/or serves discussed in Plaintiff's Amended Disclosure of Asserted Claims and Infringement Contentions dated September 13, 2006; (5) the meaning of all charts and diagrams depicting Defendants' network architecture for "CPIS" and ECA services using Eclipse terminals; (6) the meaning of all charts and diagrams depicting the flow of information and data including, but not limited to images, whether of the whole or partial document, which reveal how the hardware and software applications used in Defendants' data center(s) interconnect and function with respect to "CPIS" and the provision of ECA services uses Eclipse terminals; and (7) charts and diagrams depicting (i) the network architecture for "CPIS" and ECA services using the Eclipse terminals and (ii) the flow of information and data that illustrate how the hardware and software applications used in Defendants' data center(s) interconnect and function with respect to "CPIS" and ECA services using Eclipse terminals.

Defendants do not object to questions concerning ECA.  However, Defendants object to Plaintiff's topics, asserting they are so broad, and there is no way for Defendants to meaningfully prepare.  For example, certain topics request the "meaning of *all* charts and diagrams." (emphasis added). Defendants state they have produced some 1.4 million pages of ECA documents in this litigation including hundreds of charts and diagrams depicting the accused ECA, and it is unreasonable to expect Defendants to have each corporate representative review the entirety of First Data's production, extract all charts and diagrams pertaining to a topic, and study the documents to prepare for the corporate deposition.

Plaintiff asserts the requested information is reasonably calculated to lead to the discovery of admissible evidence as it goes to the heart of Plaintiff's infringement allegations.  According to

Plaintiff, this information will help demonstrate how Defendants, among other key factors, capture images and data; transmit those images and data; and collect, store, process, and manage the captures images and data.

The Court finds the information requested in the Infringement Notice is relevant to the claims involved in this matter, and Plaintiff has narrowly tailored the requests.  The Court is not convinced the requests impose undue burden on Defendants. Thus, this portion of Plaintiff's motion is granted. Defendants shall produce all documents responsive to the Infringement Notice and produce a 30(b)(6) witness competent and prepared to testify to the noticed deposition topics.  Based on the foregoing, it is

**ORDERED** that DataTreasury Corporation's Motion to Compel (Docket Entry # 266) is **GRANTED IN PART and DENIED IN PART** as specified above.

**SIGNED** this 30th day of October, 2006.

CAROLINE M. CRAVEN
UNITED STATES MAGISTRATE JUDGE